IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION / | No. M 07-1827 SI<br>MDL No. 1827 |
| This Order Relates To:<br><br>*SB Liquidation Trust v. AU Optronics Corp., et al.*, 3:10-cv-05458-SI<br><br>*MetroPCS Wireless, Inc. v. AU Optronics Corp., et al.*, 3:11-cv-00829-SI<br><br>*Office Depot, Inc. v. AU Optronics Corp., et al.*, 3:11-cv-02225-SI<br><br>*Interbond Corp. of America v. AU Optronics Corp., et al.*, 3:11-cv-03763-SI<br><br>*Schultze Agency Services, LLC, on behalf of Tweeter Opco, LLC and Tweeter Newco, LLC, v. AU Optronics Corp., et al.*, 3:11- cv-03856-SI<br><br>*P.C. Richard & Son Long Island Corp., et al. v. AU Optronics Corp., et al.*, 3:11-cv-04119-SI<br><br>*Tech Data Corp., et al. v. AU Optronics Corp., et al.*, 3:11-cv-05765-SI<br><br>*The AASI Creditor Liquidating Trust, by and through Kenneth A. Welt, Liquidating Trustee v. AU Optronics Corp., et al.*, 3:11- cv-05781-SI<br><br>*CompuCom Systems, Inc. v. AU Optronics Corp., et al.*, 3:11-cv-06241-SI<br><br>*NECO Alliance LLC v. AU Optronics Corp., et al.*, 3:12-cv-01426-SI<br><br>*Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. AU Optronics Corp., et al.*, 3:10-cv-05625-SI<br>*Tracfone Wireless, Inc. v. AU Optronics Corporation, et al.*, 3:10-cv-03205 SI / | Nos. 3:10-cv-05458-SI; 3:11-cv-00829-SI; 3:11-cv-02225-SI; 3:11-cv-03763-SI; 3:11-cv-03856-SI; 3:11-cv-04119-SI; 3:11-cv-05765-SI; 3:11-cv-05781-SI; 3:11-cv-06241-SI 3:12-cv-01426-SI; 3:10-cv-05625-SI; 3:10-cv-03205-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO CERTAIN ALLEGED NON-PARTY CO-CONSPIRATORS** |

Currently before the Court is defendants' motion for partial summary judgment as to certain alleged non-party co-conspirators. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for disposition without oral argument and therefore VACATES the hearing currently scheduled for September 12, 2014. Having considered the parties' papers, and for good cause appearing, the Court hereby GRANTS IN PART AND DENIES IN PART defendants' motion.

## BACKGROUND

During Track 2 discovery, defendants asked plaintiffs to identify every non-defendant coconspirator on which they based their claims, including the particular evidence supporting plaintiffs' contentions that each such entity participated in the conspiracy. In response to defendants' interrogatories, plaintiffs identified more that fifty alleged non-party coconspirators.

Defendants move for summary judgment as to all claims based upon purchases made from: (1) IBM Corp.; (2) IBM Japan, Ltd.; (3) NEC LCD Technologies, Ltd; and (4) Shanghai SVA-NEC Liquid Crystal Display Co. ("SVA-NEC").[1]

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to

---

[1] Defendants' motion originally sought summary judgment as to claims based on twelve additional alleged non-party coconspirators. In their opposition, plaintiffs agree that there is insufficient evidence that Alps Electric, Inc., Seiko Instruments, Inc., TPO Displays Corporation, Acer America Corporation, Optrex Corporation, Optrex America, and LG Innotek Co. Ltd. participated in the price-fixing conspiracy. *See* MDL Master Dkt. No. 9158 at 1, n.1. Accordingly, defendants' motion is GRANTED as to those non-parties. Plaintiffs further agree that there is insufficient evidence to establish that IBM Credit Corporation, NEC Display Solutions of America, Inc., NEC Corporation of America, NEC Electronics America, Inc., and Philips Consumer Electronics participated in the conspiracy. *Id.* at 2, n.4. However, plaintiffs state that they intend to pursue claims based upon purchases from these entities based upon the ownership or control exception laid out in *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980). Defendants reserve their right to challenge the application of this exception to these entities in a later motion. *See* MDL Master Dkt. No. 9198 at 1-2. However, for purposes of this motion, the Court GRANTS defendants' motion as to these non-parties as well.

disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 324). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(2).

On summary judgment, an antitrust plaintiff bears the burden of proving that the alleged conspirators in fact entered into an agreement. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 763 (1984). That burden may be carried either by producing direct evidence that the entity conspired, or circumstantial evidence from which a rational factfinder could conclude that the entity was part of the alleged conspiracy. *In re Citric Acid Litig.*, 191 F.3d 1090, 1093 (9th Cir. 1999). "Direct evidence in a Section 1 conspiracy must be evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted." *Id.* (quoting *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999)). When an antitrust plaintiff relies upon circumstantial evidence, however, it "must present evidence 'that tends to exclude the possibility' that the alleged conspirators acted independently." *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986)

(quoting *Monsanto*, 465 U.S. at 764).

The Ninth Circuit utilizes a two-part test when an antitrust plaintiff attempts to establish a conspiracy solely with circumstantial evidence. *See Citric Acid*, 191 F.3d at 1094. A defendant may rebut conspiracy allegations "by showing a plausible and justifiable reason for its conduct that is consistent with proper business practice." *Id.* (citation and internal quotation marks omitted). Then the burden shifts to the plaintiff "to provide specific evidence tending to show that the defendant was not engaging in permissible competitive behavior." *Id.*

**DISCUSSION**

Defendants move for summary judgment as to all claims based upon purchases made from: (1) IBM Corp.; (2) IBM Japan, Ltd.; (3) NEC LCD Technologies, Ltd ("NLT"); and (4) SVA-NEC, arguing that there is no direct evidence that any of these entities participated in the alleged conspiracy, and that any circumstantial evidence of their participation does not tend to exclude the possibility that these entities acted independently. The Court shall first address the evidence relevant to the IBM entities, and then the evidence relevant to the NEC entities.

**1.     IBM Entities.**

Defendants adduce the following evidence in support of their burden to show that the IBM entities had "a plausible and justifiable reason for [their] conduct that [was] consistent with proper business practice." *See Citric Acid*, 191 F.3d at 1094. First, defendants argue that the 1998 golf course meeting in Taiwan is not evidence of collusive behavior on IBM's part. Defendants point to deposition testimony to the effect that no agreement was, or could have been, reached during that meeting. *See* Declaration of John H. Chung ("Chung Decl.") Ex. 1. Second, defendants contend that a series of email exchanges made in advance of a June 27, 2000 Vendor Conference, which were apparently sent to, among many others, an employee at IBM, do not support an inference of conspiratorial conduct because: (1) there is no evidence the individual to whom the emails were sent had any responsibility for the sale or pricing of LCD panels, and (2) even if some information regarding shipping quantities was exchanged between IBM and some of its competitors, the mere exchange of information is insufficient to support

4

an inference of price-fixing activity. *See Wilcox v. First Interstate Bank of Oregon*, 815 F.2d 522, 526 (9th Cir. 1987) (the exchange of information available from public sources does not support an inference of conspiracy). Defendants support this second issue by pointing to testimony that information regarding forecasted LCD panel production was publicly available and was accessed by defendants in this case. *See* Chung Decl. Ex. 6. Third, defendants argue that plaintiff's evidence regarding sales to Dell is not probative of IBM's participation in the conspiracy alleged in plaintiffs' complaints. In this regard, defendants point to evidence in the record that would support pro-competitive, rather than anti-competitive behavior, *see* Plaintiffs' Ex. 45, and also note that plaintiffs claim no damages based on purchases from Dell.

The Court finds that defendants have met their burden of demonstrating that plaintiffs' evidence can support the plausible conclusion that IBM was engaged "in permissible competitive behavior." *See Citric Acid*, 191 F.3d at 1094. Because defendants have demonstrated that the record evidence can support an inference of non-conspiratorial conduct, the burden shifts to plaintiffs to "introduce evidence that tends to overcome defendants' plausible explanation and *exclude* the possibility of independent conduct by [defendants], such that an inference of collusion is reasonable." *See Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F. Supp. 2d 1166, 1193 (N.D. Cal. 2009) (emphasis in original).

Plaintiffs' evidentiary showing fails at its inception. As defendants correctly note, plaintiffs make no distinction between the two IBM entities it alleges engaged in conspiratorial activity, referring to them both interchangeably as "IBM." Aside from plaintiffs' evidence with respect to the pricing of Dell products – in which plaintiffs refer to the relevant entity as "IBM U.S." – plaintiffs fail to attribute any of their supporting evidence to any individual IBM entity, let alone either IBM Corp., or IBM Japan, Ltd., the two entities plaintiffs still allege engaged in conspiratorial activity. This is a fatal flaw. Lacking information regarding what each alleged conspirator is alleged to have done, the Court cannot evaluate whether either IBM Corp. or IBM Japan, Ltd. ever individually engaged in anti-competitive behavior. *Cf. Sun Microsystems*, 608 F. Supp. 2d at 1194 (granting summary judgment for defendants where, following extensive discovery, plaintiffs failed to distinguish which company, among several Mitsubishi entities, was responsible for which alleged conspiratorial activity).

The Court concludes that plaintiffs have failed to meet their burden to defeat summary judgment,

because the Court cannot tell, based upon the evidence plaintiffs have presented, which IBM entity may have been responsible for which acts. Accordingly, the Court GRANTS defendants' motion to the extent it seeks summary judgment of claims based upon the status of IBM Corp. and IBM Japan, Ltd. as co-conspirators.

### 2. NEC Entities.

The analysis differs with respect to the NEC entities. Defendants devote less than one page of their motion to arguing that there is insufficient evidence that any NEC entity engaged in the alleged conspiracy. The Court therefore finds that defendants have failed to meet their burden of demonstrating that the NEC entities' conduct could justifiably be found to be consistent with legitimate business practices.

Plaintiffs, by contrast, point the Court to several pieces of evidence that tend to support the inference that the NEC entities engaged in the alleged conspiracy. As to NLT, plaintiffs note that, in April, 2003, around the same time NLT was established, Mr. Hidetoshi Usui became a manager at NLT and took over responsibility for information exchanges with Mitsubishi Electric, Hitachi, Ltd., Toshiba Matsushita Display Technology, and Samsung Japan. Pls.' Ex. 56. The following month, Mr. Usui circulated a report documenting a meeting in which LG provided him with confidential pricing and production information. Pls.' Ex. 59. Throughout the remainder of that year, Mr. Usui continued to circulate reports containing confidential information regarding competitors' pricing and production activities. Pls.' Exs. 61-63. These communications continued through 2004 as well. Pls.' Exs. 66-70. The Court finds that this evidence is sufficient to survive summary judgment.

As to SVA-NEC, plaintiffs point to evidence that, soon after SVA-NEC was established in 2004, a Sanyo representative arranged a meeting for the purpose of discussing "the supply of panels." Pls.' Ex. 93. In September, 2005, representatives from AUO met with SVA-NEC representatives at SVA-NEC's premises. Pls.' Ex. 94. Minutes from that meeting detail production capacity and pricing information. *Id.* The following week, AUO circulated an email titled "Market Information from SVA (confidential do not forward)." Pls.' Ex. 95. As with plaintiffs' evidence regarding NLT, the Court finds that plaintiffs' claims with regard to SVA-NEC should survive summary judgment.

The Court finds that there is a genuine issue of material fact with respect to NLT and SVA-NEC's participation in the conspiracy, and therefore DENIES defendants' motion for summary judgment as to these two entities.

## CONCLUSION

For the foregoing reasons and for good cause shown, and on the basis of the record before it, the Court hereby GRANTS IN PART AND DENIES IN PART defendants' motion for summary judgment. This Order resolves MDL Master Docket No. 9061.

**IT IS SO ORDERED.**

Dated: September 4, 2014

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE